UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   14-CIV-62945-BLOOM/Valle

OWEN HARTY,

    Plaintiff,
v.

NORTH LAUDERDALE
SUPERMARKET, INC.,

    Defendant.
_____/

## ORDER ON MOTION TO DIMISS

**THIS CAUSE** is before the Court upon the motion of Defendant North Lauderdale Supermarket, Inc., d/b/a Sedanos Supermarket #35 ("Defendant") to dismiss all claims brought here by Plaintiff Owen Harty ("Plaintiff") or, in the alternative, for summary judgment in its favor on the same.  ECF No. [16] (the "Motion").  The Court has reviewed the Motion, all supporting and opposing submissions, and the record in this case, and is otherwise fully advised. For the reasons set forth below, the Court grants the Motion.

### I.   BACKGROUND

Plaintiff, on December 30, 2014, brought this action for declaratory and injunctive relief, as well as an award of attorney's fees, costs, and litigation expenses, against Defendant for its maintenance of structural barriers in violation the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA").   Plaintiff, in his Complaint, ECF No. [1], lists the following specific structural barriers which he encountered at Defendant's retail grocery store:

- The required clear floor space is not provided for hand sanitizers due to a trash can or merchandise. Accessible features are not properly maintained in violation of 28 CFR 36.211; 1991 ADAAG Sections 4.2.4; 4.27.2; 2010 ADAAG Sections 305.3; 309.2.

- The seating/tables in the dining area do not provide toe clearance that extends 17" minimum under the tables in violation of 1991 ADAAG Sections 4.1.3(18); 4.32.3; 2010 ADAAG Sections 226; 305.4; 306.2.3; 902.2.

- Latch side clearance of 18" is not providing on the pull side of the restroom door and a trash can is in the required maneuvering clearance. Accessible features are not properly maintained in violation of 28 CFR 36.211; 1991 ADAAG Section 4.13.6; 2010 ADAAG Section 404.2.4.

- The toilet compartment is not at least 60" by 59". The toilet compartment door lacks the required pull hardware on both sides and it is not self-closing in violation of 1991 ADAAG Sections 4.13.9; 4.17.3; 4.17.5; 2010 ADAAG Sections 604.8.1.1; 604.8.1.2.

- The lavatory pipes are not properly insulated in violation of 1991 ADAAG Section 4.19.4; ADAAG Section 606.5.

- The clear width to enter the area where the urinal is located is less than 32" wide in violation of 1991 ADAAG Section 4.3.3; ADAAG Section 403.5.1.

- In the toilet compartment, the centerline of the water closet is more than 18" from the side wall, the top of the gripping surface on the rear grab bar is higher than 36" above the finish floor, the side grab bar extends less than 52" from the rear wall, and the toilet paper dispenser is mounted less than 12" above the side grab bar in violation of 1991 ADAAG Sections 4.17.3; 4.17.6; Figure 30; 2010 ADAAG Sections 604.2; 604.5; 604.8.1.1; 604.8.1.5; 609.3; 609.4.

- The paper towel dispenser requires tight grasping with both hands to operate in violation of 1991 ADAAG Section 4.27.4; ADAAG Section 309.4.

On January 26, 2015, Defendant timely answered, generally denying Plaintiff's allegations in the absence of "strict proof." ECF No. [6]. On February 11, 2015, the Court entered a scheduling order, ECF No. [11], and the case proceeded apace. Defendant now submits evidence that, as of June 5, 2015, none of the alleged barriers to entry stated in the Complaint exist. *See* ECF No. [16-1] (Gross Decl.); ECF No. [16-2] (1st Valdes Decl.); ECF No. [23-2] (2d Valdes Decl.).

After being served in this suit and in response to Plaintiff's specific accessibility allegations listed above, Defendant engaged Jeffrey Gross, a licensed architect and an expert with regard to the ADA Standards for Accessible Design issued in 1991 and 2010, and his

architectural firm specializing in the accessible design requirements of Title III of the ADA, to serve as a consultant on ADA accessibility issues and to evaluate the accessibility of Defendant's property that is the subject of this suit. Gross Decl. ¶¶ 1-3; 1st Valdes Decl. ¶¶ 7-8. Gross inspected the store on February 2, 2015, April 17, 2-15 and May 20, 2015. Gross Decl. ¶ 4. He identified several repairs and changes directed to improve accessibility. 1st Valdes Decl. ¶ 9. During his final inspection, Gross did not find any of the accessibility issues alleged in the Complaint in existence any longer. Gross Decl. ¶¶ 5-13 (including pictures).

In addition to making those physical changes, Defendant has implemented – long before initiation of this suit – policies to ensure that its personnel provide proper service to disabled customers. 1st Valdes Decl. ¶¶ 12-14; 2d Valdes Decl. ¶¶ 6-7. This includes signage throughout the subject store which notifies mobility-impaired persons that Defendant's employees will assist them as needed upon request. *Id*.

Plaintiff admits that Defendant made changes to its property after this suit was commenced. Plaintiff has submitted countervailing evidence as to only one issue: whether the bathroom paper towel dispenser at Defendant's property, which Gross determined was compliant and did not require "tight grasping with both hands to operate," requires pulling with both hands. ECF No. [21-1] (Plaintiff's Counter-Statement of Facts) ¶ H and Exh. B; *compare* Gross Decl. ¶ 13. That paper towel dispenser has itself been replaced with one that is unquestionably compliant. 2d Valdes Decl. ¶ 8 (including pictures).

## II.  DISCUSSION

Defendant contends that Plaintiff's claims must be dismissed because it has remedied all accessibility barriers identified by Plaintiff as violating the ADA, rendering Plaintiff's claims moot and this court without subject matter jurisdiction. Defendant urges dismissal pursuant to

Rule 12(b)(1).[1]   The Court agrees.

### A. Legal Standard

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at at 1529); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.").

"In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

---

[1] In the alternative, Defendant seeks summary judgment in its favor under Rule 56, which the Court need not address.

Rule 12(b)(1) provides the proper framework for evaluating a motion to dismiss on grounds of mootness. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007).

### B. Mootness In The ADA Context

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" *Mingkid v. U.S. Atty. Gen.*, 468 F.3d 763, 768 (11th Cir. 2006). "A federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Harrell v. The Florida Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, (1992)). "The doctrine of mootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (quoting *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed. Indeed, dismissal is required because mootness is jurisdictional. Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004).

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can

give meaningful relief.'"   *Id.* (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993)).

"[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot."   *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005) (quotation omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 (2000).   "Otherwise a party could moot a challenge to a practice simply by changing the practice during the course of the lawsuit, and then reinstate the practice as soon as the litigation was brought to a close."   *Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir.1998).   "The voluntary-cessation doctrine is an exception to the general rule that a case is mooted by the end of the offending behavior."   *Houston v. 7-Eleven, Inc.*, 2014 WL 351970, at *2 (S.D. Fla. Jan. 31, 2014) (citing *Sheely*, 505 F.3d at 1183).   Under this exception, "the voluntary cessation of challenged conduct will only moot a claim when there is no 'reasonable expectation' that the accused litigant will resume the conduct after the lawsuit is dismissed."   *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir.2011) (quoting *Jews for Jesus*, 162 F.3d at 629).   "In other words, when a party abandons a challenged practice freely, the case will be moot only if it is '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'"   *Harrell*, 608 F.3d at 1265 (emphasis in original; quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1131 (11th Cir. 2005)).

Under the voluntary-cessation doctrine, a court must evaluate a defendant's assertion that the case is moot because the offending behavior has ceased by analyzing three factors:   "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated

by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Sheely*, 505 F.3d at 1184. .

"ADA-architectural-barrier cases are a unique subset of voluntary cessation-doctrine cases." *Houston*, 2014 WL 351970 at *2.

> Several courts have found that where structural modifications have been undertaken to make the facility ADA compliant the case is moot. The fundamental rationale supporting these cases is that the alleged discrimination cannot reasonably be expected to recur since structural modifications permanently undo the offending conduct.

*Id.* *See Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1379 (S.D. Fla. 2011) (Because . . . Defendant has remedied . . . the deficiencies alleged in the Amended Complaint, the Court finds that those [] claims are rendered moot and subject to dismissal for lack of jurisdiction. . . . If an ADA plaintiff has already received everything to which he would be entitled, i.e., the challenged conditions have been remedied, then these particular claims are moot *absent any basis for concluding* that plaintiff will again be subjected to the same wrongful conduct by this defendant."); *Access 4 All, Inc. v. Bamco VI, Inc.*, 2012 WL 33163, at *6 (S.D. Fla. Jan. 6, 2012) ("[F]ederal courts have found ADA claims moot when the alleged discrimination cannot reasonably be expected to recur because structural modifications are unlikely to be altered in the future.") (quotation omitted); *Nat'l Alliance for Accessability, Inc. v. Walgreen Co.*, 2011 WL 5975809, *3 (M.D. Fla. Nov. 28, 2011) (explaining that "federal courts have dismissed ADA claims as moot when the alleged violations have been remedied after the initial filing of a suit seeking injunctive relief," and collecting cases). This stands in contrast to the "stringent" standard a defendant must meet to moot a case based on the defendant's voluntary cessation of *discriminatory conduct* which violates the ADA. *See Bamco VI*, 2012 WL 33163, at *5 (distinguishing *Sheely*, 505 F.3d at 1181-88 on that basis).

### C. Plaintiff's Claims Are Moot

Defendant has demonstrated, and Plaintiff cannot dispute, that the architectural barriers at Defendant's property, alleged by Plaintiff in the Complaint to violate the ADA, no longer exist. Consequently, Plaintiff's claims are moot and subject to dismissal.

Defendant's ADA violations at the retail facility, the subject of this suit, were both isolated and unintentional. First, Defendant has demonstrated, and Plaintiff has not refuted, that Defendant generally maintains adequate policies and practices to ensure that physically challenged or mobility impaired persons are provided proper services at its facility in accordance with the ADA. Those policies pre-date and were not implemented in response to or to avoid this suit. Second, while Plaintiff has identified a separate lawsuit against Defendant based on similar allegations of ADA-non-compliance at other grocery store locations, *see* Plaintiff's Counter-Statement of Facts ¶¶ B-D and Exh. A, that suit does not evidence a pattern of repeated or intentional misconduct. Putting aside the fact that the previous suit settled and that this Court would not credit bare allegations made elsewhere, Plaintiff's argument – that Defendant has twice been notified of ADA non-compliance in the form of structural barriers and has twice rapidly remedied those issues – indicates that Defendant's non-compliance is unintentional and militates in favor of dismissal for mootness. *See Brahe v. Publix Super Markets, Inc.*, 2014 WL 1400657, at *3 (M.D. Fla. Apr. 10, 2014) (acknowledgement of liability for similar violations in separate suits did not bar dismissal for mootness).

Defendant's actions appear to be motivated by a genuine desire to conscientiously comply with ADA's architectural requirements, and not merely a desire to avoid liability. Defendant learned about the specific barriers at the subject property alleged in this suit when served with Plaintiff's Complaint. *See* 1st Valdes Decl. ¶ 7. Defendant promptly retained an ADA accessible design and remediation expert. That expert inspected the facility three times.

Defendant expended resources for those inspections and to make the recommended changes. Within five months of initial service, Defendant has permanently corrected all of the architectural defects which had posed a barrier to Plaintiff's use of the facility. "These are the actions of an entity that is highly motivated, and genuinely interested in complying with the full breadth of the ADA." *Houston*, 2014 WL 351970 at *3; *see also Bamco VI*, 2012 WL 33163, at *5 ("[E]ven if the repairs were motivated by the pending lawsuit, the record reflects that Defendant acted promptly with a genuine desire to comply with the law."); *Walgreen*, 2011 WL 5975809, at *3 (same).

Finally, Defendant has specifically acknowledged liability for any architectural barriers which did not conform to ADA requirements by correcting them. *See* ECF No. [23] (Reply) ¶ 20.

"The essential question that must be answered under the voluntary-cessation doctrine is simple: Is it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Houston*, 2014 WL 351970 at *4. The Court is convinced – in the context of Plaintiff's allegations of ADA architectural-barrier violations and when presented with the facts of Defendant's full remediation and compliance – that they could not. It would be absurd to expect Defendant to spend money to undo the structural modifications it just paid to implement. Plaintiff's claims are, accordingly, moot and this Court is divested of subject matter jurisdiction to address them.

### III.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion, ECF No. [16], is **GRANTED** and this case is **DISMISSED** for lack of subject matter jurisdiction. The Clerk is directed to **CLOSE** this matter. Any pending motions are **DENIED AS MOOT**. Any impending deadlines are **TERMINATED**.

**DONE AND ORDERED** in Miami, Florida this 3rd day of August, 2015.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

cc:   counsel of record